**INDIANA & MICHIGAN ELECTRIC COMPANY et al., Petitioners,**

**v.**

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**COMMONWEALTH EDISON COMPANY, Petitioners,**

**v.**

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**Nos. 72–1491 and 72–1498.**

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1973.

Decided Jan. 23, 1975.

As Amended Jan. 29, 1975.

H. Edward Dunkelberger, Jr., Washington, D. C., Von E. Livingston, Fort Wayne, Ind., Charles W. Campbell, Plainfield, Ind., Ralph W. Husted, Indianapolis, Ind., David S. Richey, Lebanon, Ind., Frederick F. Eichhorn, Jr., Hammond, Ind., Frederick P. Bamberger, Evansville, Ind., for petitioners.

Kent Frizzell, Asst. Atty. Gen., Glen R. Goodsell, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before CLARK, Associate Justice,* KILEY, Circuit Judge,** and CAMPBELL, Senior District Judge.***

WILLIAM J. CAMPBELL, Senior District Judge.

In Appeal No. 72–1498, petitioner Commonwealth Edison Company (Edison) has sought review of the Environmental Protection Agency (EPA) Administrator's approval of the Air Pollution Control Implementation Plan of Illinois (Illinois Plan), which approval was granted pursuant to Section 110(a) of the Clean Air Act (the Act), as amended, 42 U.S.C. § 1857c–5(a). In Appeal No. 72–1491, petitioners Indiana and Michigan Electric Company, et al, have sought review of the Administrator's approval

---

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

** Senior Circuit Judge Roger J. Kiley, deceased, did not participate in the decision in this case.

*** Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

of the Air Pollution Control Implementation Plan of Indiana (Indiana Plan). This court has exclusive jurisdiction to review the Administrator's approvals pursuant to Section 307(b)(1) of the Act, 42 U.S.C. § 1857h–5(b)(1).

*The Clean Air Act Amendments of 1970*

The Clean Air Act Amendments of 1970 "represented a drastic revision of earlier federal air quality control legislation," Appalachian Power Company v. Environmental Protection Agency, 477 F.2d 495, 497 (4th Cir. 1973). The various provisions of this legislation provide an outline for the factual background of these appeals and comprise the foundation for our resolution of the issues which they present.

Section 108(a) of the Act, 42 U.S.C. § 1857c–3(a), directs the Administrator to publish a list of air pollutants which in his judgment have an adverse effect on public health and welfare, the presence of which in the ambient air "results from numerous or diverse mobile or stationary sources." Under Section 109 of the Act, 42 U.S.C. § 1857c–4, the Administrator is required to publish proposed national primary and secondary ambient air quality standards for each such pollutant. Primary standards are ambient air quality standards which the Administrator deems "requisite to protect the public health." Secondary ambient air quality standards are those which, in the Administrator's judgment, are "requisite to protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air." 42 U.S.C. § 1857c–4(b).

For the purpose of these appeals, Section 110 of the Act, 42 U.S.C. § 1857c–5, is of particular importance. Under this section, each state is required, after reasonable notice and public hearings, to submit to the Administrator a plan which provides for the implementation, maintenance and enforcement of the aforementioned primary and secondary ambient air quality standards. The Administrator, in turn, is required to approve a state's plan "if he determines that it was adopted after reasonable notice and hearing" and that it provides for the attainment of primary standards "as expeditiously as practicable but . . . in no case later than three years from the date of approval . . . ," and the attainment of secondary standards within a "reasonable time." 42 U.S.C. § 1857c–5(a)(2)(A).

In addition to these findings, approval is contingent upon the Administrator's determination that the plan comports with the requirements of Section 110(a)(2)(B) through (H). Without setting forth these requirements verbatim, they include the need for such a plan to provide (1) certain schedules and timetables for compliance, (2) provision for the establishment and operation of appropriate devices and procedures for monitoring and analyzing ambient air quality data, (3) procedures for reviewing the location of new sources to which the standards apply, (4) adequate provisions for intergovernmental cooperation, (5) assurance that the state will have adequate personnel, funding and authority to monitor and enforce compliance, and (6) provisions for modification of the plan to account for revisions in national ambient air quality standards or the availability of improved and more expeditious methods for achieving compliance.

Significantly, this substantially detailed list of findings which must be made by the Administrator prior to approval of a state's plan does not include any requirement that he determine or consider the technological feasibility of the plan or the existence of alternative methods of attaining the national standards.

Section 113 of the Act, 42 U.S.C. § 1857c–8, sets forth the procedures for federal enforcement of an approved plan. Upon determining that a violation has occurred, the Administrator must notify the party responsible for the violation. If the violation extends beyond the 30th day after such determination, the Administrator may issue an order requiring compliance with the require-

ments of the implementation plan or may bring a civil action in the district court for injunctive or other appropriate relief. The Act further provides for the imposition of fines against those who knowingly violate or refuse to comply with the requirements of a state plan or an order issued by the Administrator requiring compliance.

### The Illinois and Indiana Plans

On April 7, 1971, the Administrator published proposed guidelines for the submission of state plans, and on April 30, 1971, he promulgated national primary and secondary ambient air quality standards for six pollutants. Pursuant to Section 110 of the Act, the State of Illinois submitted its proposed implementation plan to the EPA in January of 1972 and filed several supplements to the plan within the following three month period. The Indiana Plan was submitted for the Administrator's approval on January 31, 1972. Both plans established emission limitations for particulate matter, sulfur oxides and nitrogen dioxides from coal-fired steam generating plants, and with respect to the emission of these pollutants, both were approved by the Administrator on May 31, 1972. Pursuant to § 307(b)(1) of the Act, 42 U.S.C. § 1857h–5(b)(1), petitioners seek review by this court of the Administrator's approval of the Illinois and Indiana plans.

The present appeals challenge the legality of the Administrator's approval of the Illinois and Indiana plans. The issues presented by petitioners may be summarized as follows:

1. Whether the provisions of Section 102(2)(C) of the National Environmental Policy Act are applicable to the Administrator's approval of state implementation plans under Section 110 of the Clean Air Act.
2. Whether approval of the Illinois and Indiana plans was in violation of the criteria set forth in Section 110 of the Clean Air Act, or more specifically, whether Section 110 requires the Administrator to consider the technological feasibility and the economic impact of a proposed plan.
3. Whether those provisions of the Illinois and Indiana plans concerning emission limitations for particulate matter, sulfur oxides and nitrogen dioxides are arbitrary, capricious and an abuse of discretion, as applied to petitioners.
4. Whether the failure to provide petitioners an opportunity to submit their views and other data to the Administrator prior to his approval of the implementation plans in question violated the Administrative Procedure Act or established principles of due process of law.

Section 102(2)(C) of the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C), provides that, with respect to an action by a federal agency which "significantly [affects] the quality of the human environment" a detailed statement shall be prepared concerning

"(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

It is undisputed that in approving and adopting the Illinois and Indiana plans, the Administrator did not comply with Section 102(2)(C) of NEPA. The issue concerns whether he was required to do so. We hold, in accord with other courts that have considered this question, that, for the purposes of the approval of state implementation plans under Section 110 of the Clean Air Act, Section 102(2)(C) is inapplicable.

The basis for so holding was well expressed by the Third Circuit in Getty Oil Company v. Ruckelshaus, 467 F.2d 349 (1972), the court noting that "the Administrator is given the responsibility of making policy reviews under 42 U.S.C. § 1857 h–7, annual comprehensive economic cost studies under 42 U.S.C. § 1857 j–1, and periodic reports to Congress under § 1857 j–2. It is apparent that the Clean Air Act itself contains sufficient provisions for the achievement of those goals sought to be attained by NEPA." 467 F.2d at 359.

The views expressed by the *Getty* Court in this regard were later approved and followed by the Fourth Circuit in Appalachian Power Co. v. Environmental Protection Agency, 477 F.2d 495, 508 (1973), and the Sixth Circuit in Buckeye Power, Inc. v. Environmental Protection Agency, 481 F.2d 162 (1973), and were reaffirmed by the Third Circuit in Duquesne Light Co. v. Environmental Protection Agency, 481 F.2d 1, 9 (1973). The Tenth Circuit, after considering the mission of the EPA, opined that to "compel the filing of impact statements could only serve to frustrate the accomplishment of the Act's objectives," and held that no such statement need be prepared. Anaconda Company v. Ruckelshaus, 482 F.2d 1301, 1306 (1973). The D.C. Circuit has at least twice so held, once on the basis of its careful review of legislative history, Portland Cement Association v. Ruckelshaus, 158 U.S.App.D.C. 308, 486 F.2d 375, 379–387 (1973), and once on the ground that "we see little need in requiring a NEPA statement from an agency whose raison d'etre is the protection of the environment . . .." International Harvester Company v. Ruckelshaus, 155 U.S.App.D.C. 411, 478 F.2d 615, 650 n.130 (1973).

The foregoing decisions persuasively establish that in the present context, the Administrator's consideration and approval of state implementation plans pursuant to Section 110 of the Clean Air Act is not conditioned upon compliance with Section 102(2)(C) of NEPA.

 As previously noted, Section 110(a)(2) of the Act prescribes certain criteria which any proposed implementation plan must satisfy in order to obtain approval by the Administrator. Petitioners contend that the Administrator's failure to consider the technological feasibility and the economic impact of the Illinois and Indiana plans prior to their approval constituted a failure to comply with the statutory requirements of Section 110(a)(2).

Our review of the statute does not support petitioners' contention that these factors should have been considered by the Administrator in approving or disapproving the plans. See, Buckeye Power, Inc. v. Environmental Protection Agency, 481 F.2d 162, 173 (6th Cir. 1973). The statute imposes upon the Administrator a mandatory obligation: he "shall approve" a proposed implementation plan if it was adopted by the State after reasonable notice and hearing, provides for the attainment of primary standards as expeditiously as practicable but "in no case later than three years from the date of approval," provides for the implementation of secondary standards within a reasonable time, and satisfies the requirements of subparagraphs (B) through (H) of subsection 110(a)(2).

Both the Illinois and Indiana plans were formulated and adopted after full public hearings. Subparagraphs (B) through (H), as previously discussed, are concerned with whether the state submitting a plan is capable of enforcing it, i. e. whether schedules and timetables for compliance have been specified; whether sufficient machinery, methods, procedures, funding, personnel and authority will be available to monitor, inspect and enforce the plan; whether the plan contains adequate provisions for intergovernmental cooperation, etc. Petitioners do not contend that the Administrator failed to consider those factors when he approved the plans.[1] Rather

---

1. Section 110(a)(2)(B) requires that the Administrator determine whether the state plan

"includes emission limitations, schedules, and timetables for compliance . . . as may

their claim centers on subparagraph (A) of subsection 110(a)(2), asserting that since compliance with these plans is alleged to be technologically infeasible and/or economically prohibitive, the plans do not provide for compliance "as expeditiously as practicable."

The statute, however, requires compliance as expeditiously as practicable, but in no case "later than three years from the date of approval . . . ". This limitation, in and of itself, reflects a limit beyond which Congress has chosen to disregard arguments of "impracticability". Furthermore, in view of the numerous criteria which Section 110(a)(2) specifies for the Administrator's consideration prior to approval of a state plan, we find the absence of any reference to economic or technological factors highly significant.

These facts, combined with the Administrator's statutory obligation to approve a plan which satisfies the minimum criteria set forth in subsection 110(a)(2), even if the plan provides for emission standards which are stricter than those prescribed by the Administrator,[2] precludes a construction of the Act which would impose upon the Administrator a duty, not specifically set forth in the Act, to consider technological and economic factors in determining whether an implementation plan should be approved.

This is not to say that technological and economic consideration are wholly irrelevant under the Clean Air Act. As the court held in Buckeye Power, Inc. v. Environmental Protection Agency, *supra*,

and as will be more fully discussed herein, such factors may be of significance in connection with enforcement proceedings instituted pursuant to Section 113 of the Act. We hold, however, that a plan's technological feasibility and economic impact are not among the factors which the Administrator is obliged to consider under Section 110(a)(2), and that where a state's implementation plan satisfies the criteria set forth therein, the statute quite specifically requires the Administrator to approve it.

Petitioners further contend that the emission limitations set forth in the Illinois and Indiana plans are arbitrary, unreasonable and capricious, as applied to them. Again asserting that compliance is not technologically feasible, petitioners' arguments of unreasonableness, "as applied," center on such contentions as (1) low sulfur fuel is not available in sufficient quantities to satisfy their considerable needs; (2) costs which would result from petitioners' attempts to comply would be so great as to be unreasonable, in view of the "minimum impact" which compliance would have upon ambient air quality; (3) equipment necessary for sulfur removal is not reliable; (4) given the nature of petitioners' operations, the shut-down of operations which would be necessary to facilitate installation of new emission control equipment would result in a loss of vital power services to the public.

In our view, these contentions serve to underscore the appropriateness of considering technological and economic factors in the course of enforcement pro-

---

be necessary to insure attainment and maintenance . . . " of federal ambient air quality standards. Petitioners suggest that the word "necessary" imposes upon the Administrator an obligation to consider whether the requirements of a state plan under consideration are in excess of those needed (necessary) to attain federal standards. We disagree. Subparagraph (B) imposes upon the Administrator an obligation to insure that the state plan provides, at a minimum, emission limitations sufficient (i. e. necessary) for the attainment of federal standards. That a state plan provides requirements which are more stringent than those necessary for the attain-

ment of federal standards does not warrant disapproval of the plan. See, *infra*, n.2.

2. A state plan *must* meet the minimum criteria, but *may* exceed them. "Stated somewhat differently, the [1970] Amendments provided that states, in preparing their own plans for control, could be as tough on polluters as they wished, but that no state could allow industry to exceed the federal standards on smoke and dust, carbon monoxide and other common pollutants." Appalachian Power Co. v. Environmental Protection Agency, 477 F.2d 495, 498 (4th Cir., 1973). See also, Getty Oil Company v. Ruckelshaus, 467 F.2d 349, 358 (3rd Cir., 1972).

ceedings rather than in connection with approval of a state plan under Section 110. Many of the very arguments presented by petitioners demonstrate that the requirements of a state's implementation plan might well be achievable as applied to most stationary facilities which emit the pollutants covered under the plan, and yet be technologically impossible to achieve as applied to a particular source. To hold that approval or adoption of a state's plan is "unreasonable" or "capricious" on the basis of its application to a particular facility or company would undermine the purpose and intent of the legislation under consideration, and would require rejection of a state's plan if any person arguably subject to the plan could demonstrate its inability to adapt to the emission limitations set forth therein. No fair reading of the Clean Air Act supports such a proposition.

■ Edison suggests in its brief that "review of the regulation is probably not available in an enforcement proceeding based upon that regulation", citing Section 307(b)(2) of the Act, 42 U.S.C. § 1857h–5(b)(2).[3] However, since we hold that a plan's technological feasibility and economic impact need not be considered by the Administrator in approving a state plan under Section 110(a)(2) and, a fortiori, that such factors do not form a basis for review of such approval by this court under Section 307(b)(1), it follows that Section 307(b)(2) does not preclude petitioners from presenting technological feasibility and economic impact arguments in the course of enforcement proceedings. In this regard, we follow the lead of the Sixth Circuit in Buckeye Power, Inc. v. Environmental Protection Agency, 481 F.2d at 173, and to the extent that Getty Oil Company v. Ruckelshaus, 467 F.2d 349 (3rd Cir. 1972) is inconsistent with this view, we respectfully decline to follow that decision.

■■ We are not called upon to decide the extent to which technological and economic considerations should be considered by a district court in connection with enforcement proceedings instituted pursuant to Section 113(b), and we consider it inappropriate to do so here, except to offer a brief observation regarding good faith efforts to comply. Under Section 113(a)(4), any order issued by the Administrator directing compliance with the provisions of an implementation plan must "specify a time for compliance which the Administrator determines is reasonable, taking into account the seriousness of the violation and any good faith efforts to comply with applicable requirements." 42 U.S.C. § 1857c–8(a)(4). This language provides a helpful guideline for district courts with respect to enforcement proceedings. It reflects Congressional intent that serious violations be corrected expeditiously, and yet recognizes that compliance may in some instances border on the impossible, despite the good faith efforts of a party subject to regulation. Where such is the case, the good faith efforts of that party are worthy of consideration in terms of compliance schedules as well as the imposition of penalties. The converse, of course, also applies. In view of the clear purpose behind enactment of the Clean Air Act Amendments of 1970, the absence of demonstrable good faith efforts toward compliance should serve to dampen any enthusiasm for technological and economic arguments advanced in defense of a claimed violation.[4]

■ Petitioners' final contention concerns the absence of any hearing before the EPA prior to the Administrator's approval of the Illinois and Indiana plans. It is argued that prior to approval of the state plans, the Administrator should have complied with the Administrative Procedure Act (APA), 5 U.S.C. § 551 et

---

**3.** Section 307(b)(2) provides as follows:

"Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement."

**4.** See, County of Cook v. Lloyd A. Fry Roofing Company, Ill., 319 N.E.2d 472, 476–477 (1974).

seq., and that fundamental considerations of due process dictate that approval and adoption of a state's implementation plan be preceded by an opportunity for opposing parties to submit their views.

Upon consideration of the procedural scheme reflected in Sections 109 through 113 of the Clean Air Act, we conclude that Congress did not intend that the informal rule making or the adjudicatory procedures set forth in §§ 553–557 of the APA should be applicable to approval and disapproval decisions of the Administrator under Section 110(a)(2) of the Act. Additionally, we find that approval of the Illinois and Indiana plans without first requesting the submission of opposing views by interested parties did not deny to petitioners due process of law.

At the outset we note that Section 110(a)(2) does not require the Administrator to hold hearings "on the record" (or words to that effect) prior to approval of a state plan. The Supreme Court has held that, in the absence of a specific requirement to this effect, Sections 556 and 557 of the APA are inapplicable, and formal adjudicatory hearings are not necessary. United States v. Allegheny-Ludlum Steel Corp. et al., 406 U.S. 742, 756–757, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972). See also Duquesne Light Co. v. Environmental Protection Agency, 481 F.2d 1, 6 (3rd Cir., 1973).

Petitioners contend, however, that even if formal adjudicatory proceedings are not appropriate, the EPA is nevertheless an "agency" within the meaning of 5 U.S.C. § 551(1), approval of a state implementation plan constitutes "rule making" within the meaning of 5 U.S.C. § 551(5), and the Administrator is therefore obliged to comply with the informal rule making procedures prescribed by 5 U.S.C. § 553(b) and (c). Subsection (b) requires the publication of notice of proposed rule making, and subsection (c) requires that after publication of notice, "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation."

We reject petitioners' contention that the informal rule-making procedures provided under Section 553 of the APA were intended to apply to the Administrator's approval of state plans under Section 110(a)(2) of the Clean Air Act. Other sections of the Act provide, under appropriate circumstances, for hearings and/or the submission of written data and arguments by interested parties, a fact which renders the absence of a specific requirement to this effect under § 110(a)(2) significant. For example, prior to promulgation of primary and secondary ambient air quality standards, the Administrator is required under Section 109 of the Act to give "interested persons" an opportunity to "submit written comments thereon". Similarly, Section 111(b)(1)(B) provides that interested persons be given an opportunity to submit written comments respecting proposed regulations establishing federal standards of performance for new stationary sources which emit air pollutants. Section 112 requires that public hearings be held (after publication of proposed regulations establishing emission standards for hazardous air pollutants) as a prerequisite to the adoption of the proposed standards.

In addition, before an order requiring compliance with an approved plan can take effect, Section 113(a)(4) requires that the party to whom the order is issued must be given an opportunity to confer with the Administrator. As previously noted, the order must take into account the seriousness of the violation and "any good fairth efforts to comply" —findings which could hardly be made without consideration of arguments and data submitted by the party affected.

Finally, under Section 110(c), prescribing procedures for the adoption of implementation plans by the EPA applicable to states which have failed to submit a proposed plan or who have submitted an unsatisfactory plan, the Administrator is required to hold a public hearing if "such State held no public hearing associated with respect to such plan . . .". This provision, contained in the same section of the Act as that which requires

approval of implementation plans which satisfy the criteria of Section 110(a)(2), creates the reasonable inference that Congress was of the view that an adequate hearing at the state level would serve the purposes of Section 553 of the APA in giving interested persons an opportunity to submit their views. See, Appalachian Power Co. v. Environmental Protection Agency, 477 F.2d 495, 502–503 (4th Cir. 1973). This conclusion is reenforced by the fact that, while Section 110 of the Act is silent as to whether the APA's informal rule-making procedure should be applicable to implementation plan approval decisions, it specifically requires the Administrator to find that the plan was adopted by the state "after reasonable notice and hearing . . .."

The absence of any provision in Section 110(a)(2) requiring the Administrator to hold hearings or to provide an opportunity for the submission of views, considered in light of the various other sections of the Act which specifically require formal hearings or informal rule-making procedures, leads us to conclude that the informal procedures prescribed by Section 553 of the APA were not intended to apply to approval/disapproval decisions under Section 110(a)(2). Appalachian Power Co. v. Environmental Protection Agency, supra; Duquesne Light Co. v. Environmental Protection Agency, 481 F.2d 1, 8 (3rd Cir. 1973).

Nor can we accept the petitioners' contention that the procedure employed by the Administrator in reviewing and approving the Illinois and Indiana plans deprived them of due process of law. First of all, the arguments advanced by petitioners in opposition to these plans center on assertions of technological infeasibility and economic impact. As we have indicated, these factors are not among the criteria which the Administrator is obliged to consider under Section 110(a)(2) in determining whether a state plan should be approved. The receipt of petitioners views and arguments respecting technology and economic impact thus would not have enhanced the decision making process.

More importantly, the procedural scheme prescribed by the Act offers adequate opportunity for the submission of views and for judicial appeal. Prior to the promulgation of ambient air standards, interested parties are afforded an opportunity under Section 109 to submit their views. Prior to the formulation of a state plan, full public hearings are required under Section 110(a), and where a proposed plan has been formulated without public hearings, it may not be approved by the Administrator. In such instances, the Administrator must formulate a plan applicable to the state which has submitted an unsatisfactory proposal, and such plan cannot be adopted without first holding public hearings. Section 110(c).

In addition, petitioners have a right to challenge the reasonableness of state plans in the state courts, and as the respondent concedes, if "part of a state implementation plan is held invalid by a state court, the state would have to revise that part. Should the state fail to do so, the Administrator must propose and promulgate a revision . : .. In either case, a hearing, or at least an opportunity for a hearing, is a prerequisite to adoption of the new regulation." (Respondents' brief, No. 72–1498).

Finally, as previously noted, arguments concerning technology and economic impact may be presented to the Administrator prior to the date on which a compliance order issued pursuant to Section 113(a)(4) takes effect, and may be raised in the course of enforcement proceedings under Section 113(b).

Viewing the procedures for promulgation, implementation and enforcement of ambient air quality standards and emission limitations as a whole, the failure of the Administrator to provide an opportunity for the submission of views, data and arguments by interested parties prior to his approval of the Illinois and Indiana plans did not deny petitioners due process of law.

In view of the foregoing, the motion for remand to the Environmental Protection Agency in No. 72–1491 is denied;

this Court's Order of August 20, 1974 enjoining enforcement of the Indiana Plan pending review is vacated; petitioners' motion in 72–1491 and 73–1512 (a related appeal) for an order staying approval and enforcement of the Indiana Plan is denied; and the decisions of the Administrator of the Environmental Protection Agency approving the Illinois and Indiana Plans are affirmed.

Affirmed.