ASHLAND CHEMICAL COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District   No. 77-62

Opinion filed March 9, 1978.

James W. Gladden, Jr., of Chicago (Mayer, Brown & Platt, of counsel), for petitioner.

William J. Scott, Attorney General, of Chicago (Russell R. Eggert, Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

This appeal is from the Pollution Control Board's denial of an operating permit to Ashland Chemical Company for the boilerhouse at its Mapleton, Illinois, plant.

The Ashland plant at Mapleton near Peoria, Illinois, produces chemicals from beef tallow and other material and uses three boilers, two of which are coal-fired. The Environmental Protection Agency denied Ashland's original application for an operating permit on June 10, 1975, because Ashland failed to meet the air pollution standards of the Pollution Control Board as set out in Rules 203(g)(1)(B) and 204(c)(1)(A) (Ill. P.C.B. Rules & Regs., ch. 2, Rules 203, 204). Rule 203(g) establishes particulate emission standards and Rule 204(c) fixed sulfur dioxide emission limitations for solid fuel combustion emission sources. After the permit application was denied, Ashland filed a petition for a variance which was granted on September 29, 1975. At the Board's request, Ashland submitted extensive air quality data in support of its variance petition. The Board opinion granting the variance expressly found that Ashland had established that its boilers do not cause or contribute to violations of ambient air quality standards in the Peoria-Pekin area, thereby meeting its burden under *Train v. Natural Resources Defense Council, Inc.* (1975), 421 U. S. 60, 43 L. Ed. 2d 731, 95 S. Ct. 1470, as then interpreted.[1] Ashland's variance was conditioned upon the installation of baghouse fabric filters, the conversion to a low sulfur coal by June 1, 1976,

---

[1] The Board later changed its view of the requirements imposed by *Train*. See *Caterpillar Tractor Co. v. Pollution Control Board* (3d Dist. 1977), 48 Ill. App. 3d 655, 363 N.E.2d 419.

and the performance of stack tests to ascertain whether Ashland had achieved compliance with the rules. The expiration date of the variance was June 1, 1976.

On March 25, 1976, the Illinois Supreme Court held invalid Rule 204(c)(1)(A) and 203(g)(1)(B), and remanded those rules to the Board for further consideration. (*Commonwealth Edison Co. v. Pollution Control Board* (1976), 62 Ill. 2d 494, 343 N.E.2d 459.) The Board subsequently ruled that variances from the invalid rules were no longer necessary. After the *Commonwealth Edison* decision, Ashland informed the Environmental Protection Agency that it would continue installation of the filters but would postpone the purchase of low sulfur coal. Then on April 23, 1976, Ashland filed a new application for an operating permit, submitting in lieu of technical data, the Board's opinion granting the variance in which the Board said:

"[Petitioner] shows that [air pollution] violations existing in the Peoria-Pekin area approximately 18 miles from the Ashland plant, are not caused or contributed to by that plant."

The Agency denied the permit because of Ashland's failure to show compliance with ambient air quality standards as required by Rule 102 (Ill. P.C.B. Rules & Regs., ch. 2, Rule 102).[2] Ashland appealed to the Board which affirmed the denial with an opinion stating that Ashland failed to meet its burden of proof of compliance with ambient air quality standards when it merely filed the Board's variance opinion without submitting any of the background data upon which the Board's findings were based. Ashland has brought this administrative review action seeking a reversal of the Agency and Board orders.

■■ Ashland asserts that under the doctrine of *res judicata*, the Board's finding in the variance proceeding was conclusive here on the question of compliance with ambient air quality standards. In other words, having once made a factual determination that Ashland does not cause or contribute to violations of ambient air quality standards, the Board is bound by that finding in future proceedings. Illinois courts have frequently refused to apply the doctrine of *res judicata* to administrative proceedings and in so doing have not distinguished the two separate aspects of the doctrine: estoppel by judgment and estoppel by verdict. (*E.g., Daley v. License Appeal Com.* (1st Dist. 1965), 55 Ill. App. 2d 474, 205 N.E.2d 269.) Generally the doctrine of estoppel by judgment is a bar to the relitigation of the same cause of action while estoppel by verdict precludes relitigation of the same facts in a subsequent case involving a

---

[2] Rule 102: "PROHIBITION OF AIR POLLUTION. No person shall cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as, either alone or in combination with contaminants from other sources, to cause or tend to cause air pollution in Illinois, or so as to violate the provisions of this Chapter, or so as to prevent the attainment or maintenance of any applicable ambient air quality standard."

different cause of action. *People ex rel. Chicago & Eastern Illinois R.R. Co. v. Fleming* (1969), 42 Ill. 2d 231, 246 N.E.2d 275; 46 Am. Jur. 2d *Judgments* §397 (1969).

In *Mississippi River Fuel Corp. v. Illinois Commerce Com.* (1953), 1 Ill. 2d 509, 513, 116 N.E.2d 394, 396-97, our supreme court stated:

"The concept of public regulation includes of necessity the philosophy that the commission shall have power to deal freely with each situation as it comes before it, regardless of how it may have dealt with a similar or even the same situation in a previous proceeding.

Whatever may be the moral obligation of the commission to adhere to the purpose and spirit of its own previous orders, it cannot be said that it is under a legal duty to do so." Accord, *Citizens Savings & Loan Assocation v. Knight* (4th Dist. 1966), 74 Ill. App. 2d 234, 219 N.E.2d 355.

Other jurisdictions are divided as to the application of the doctrine of *res judicata* to administrative decisions. (See 73 C.J.S. *Public Administrative Bodies and Procedure* §147 (1951).) Federal courts have frequently recognized that an administrative agency performing a judicial function may be estopped to relitigate a factual issue previously determined but administrative *res judicata* is applied with more flexibility than the judicial concept. (*Leviner v. Richardson* (4th Cir. 1971), 443 F.2d 1338, 14 A.L.R. Fed. 768; 2 Am. Jur. 2d *Administrative Law* §502 (1962).) The decisions in Illinois have not been unanimous. An award by the Illinois Industrial Commission was held to be *res judicata* in *Trigg v. Industrial Com.* (1936), 364 Ill. 581, 5 N.E.2d 394, 108 A.L.R. 153, and in *Chicago & West Towns Rys., Inc. v. Illinois Commerce Com.* (1947), 397 Ill. 460, 463, 74 N.E.2d 804, 806, the court said:

"It is, of course, elementary that all of the facts passed upon and adjudicated upon the prior [Commerce Commission] hearing of this case cannot be relitigated * * *."

■■ The Board argues that *res judicata* does not apply here because this permit proceeding is actually a different cause of action than the earlier variance proceeding. While this difference would prevent estoppel by judgment from being a bar, estoppel by verdict does not require an identity of cause of action, but rather an identity of factual issue. The factual issue in this case is whether Ashland's operations cause or contribute to violations of ambient air quality standards, and in the variance proceeding the Board expressly found that Ashland's operations do not violate those standards. Although either party could have moved to incorporate by reference the data and other evidence introduced in the earlier proceeding between the same parties, no such motion was made, and the Board found that Ashland failed to meet its burden of proof when

it merely submitted the Board's prior finding with no supporting data. We do not agree. To allow the Board to ignore its earlier ruling would encourage repeated relitigation of the same issues of fact.

■■ While the Board's earlier finding would not necessarily be binding on the Board in the face of contradictory evidence, we believe it was *prima facie* evidence of compliance with Rule 102. Furthermore, Ashland introduced evidence that its Mapleton plant was located within the significant impact area of a supplemental control system (SCS) whereby two power companies agreed to switch fuels or curtail loads when atmospheric conditions for dispersion of contaminants are poor. According to the testimony of an Agency engineer, there should be no air quality violations within the area where Ashland's plant is located if SCS is working as intended. Since the Agency offered no contrary data, the record affords no basis for the denial of a permit and the Board's ruling must be reversed.

■■ The Attorney General, in his brief on behalf of the Board and the Agency, argues that this appeal should be dismissed as moot because the Board has now reissued Rules 203(g)(1)(B) and 204(c)(1)(A), as originally adopted, and Ashland is not entitled to a permit under present standards which are more stringent than the applicable ambient air quality standards under Rule 102. It is true that a reviewing court must dispose of a case under the law as it now exists (*Rios v. Jones* (1976), 63 Ill. 2d 488, 348 N.E.2d 825), but the reissuance of the rules does not necessarily render this appeal moot. A permit enforcement proceeding is pending against Ashland which seeks to impose penalties for operating without a permit. Obviously we are dealing with a substantial issue and an actual controversy. *Gribben v. Interstate Motor Freight System Co.* (1st Dist. 1958), 18 Ill. App. 2d 96, 151 N.E.2d 443.

A similar situation confronted this court in *Celotex Corp. v. Pollution Control Board* (3d Dist. 1977), 53 Ill. App. 3d 662, 368 N.E.2d 1134, where Celotex was improperly denied a permit after Rule 204(c)(1)(A) was invalidated. However, at the time of the appellate decision, the rule had been reinstated, and Celotex would not qualify for a permit and could have been subjected to penalties. In order to do justice to all parties, we remanded the cause to the Board with directions to issue an operating permit effective from the date of the improper denial and expiring in 120 days which would allow Celotex time to reapply for a permit. This result is consistent with the Board's policy "not to penalize those who are honestly trying." *CPC International, Inc. v. Pollution Control Board* (3d Dist. 1974), 24 Ill. App. 3d 203, 207, 321 N.E.2d 58, 61.

Similarly we think Ashland is entitled to an opportunity either to comply with the reinstated rules or to seek another variance without being subject to penalties for operating without a permit. Accordingly,

we reverse the order of the Pollution Control Board, and remand this cause with directions to issue an operating permit to Ashland, valid from June 1, 1976, for a period to expire 120 days after the date of issuance of this court's mandate herein, subject to such reasonable conditions as are deemed appropriate.

Reversed and remanded with directions.

ALLOY and STOUDER, JJ., concur.