THE ENVIRONMENTAL PROTECTION AGENCY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District   No. 81-32

Opinion filed September 30, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (John Van Vranken, Assistant Attorney General, of counsel), for petitioner.

Percy Lee Angelo and James W. Gladden, Jr., both of Mayer, Brown & Platt, of Chicago, for respondents.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is a petition for direct review, pursuant to section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1041), of a decision of the Illinois Pollution Control Board (hereinafter the Board). That decision reversed the Environmental Protection Agency's (hereinafter the Agency) denial of an application for renewal of an operating permit and for a construction permit submitted by Sherex Chemical Company (hereinafter Sherex).

Sherex owns and operates a chemical manufacturing plant in Mapleton. The plant includes two coal-fired boilers and a 100-foot boilerhouse stack. The application at bar sought approval of the continued use of the boilers and construction of a 40-foot extension of the stack.

A brief history lends perspective to this litigation. Sherex is the successor to Ashland Chemical Company (hereinafter Ashland). Ashland's original application for an operating permit was denied in June 1975 as the company failed to meet the particulate emission standards of Air

Pollution Rule 203(g)(1)(B) (Ill. P.C.B. Rules and Regs., ch. 2, Rule 203(g)(1)(B)) (hereinafter Rule 203) and the sulfur dioxide emission standards of Air Pollution Rule 204(c)(1)(A) (Ill. P.C.B. Rules and Regs., ch. 2, Rule 204(c)(1)(A)) (hereinafter Rule 204). Thereafter a variance was granted upon the conditions that baghouse fabric filters would be installed, low sulfur coal would be used, and stack tests would be performed. (See *Ashland Chemical Co. v. Pollution Control Board* (1978), 57 Ill. App. 3d 1052, 1053-54, 373 N.E.2d 826, 827, *appeal denied* (1978), 71 Ill. 2d 606 (hereinafter *Ashland I*).) After Rules 203 and 204 were invalidated in *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, *aff'd in relevant part* (1976), 62 Ill. 2d 494, 343 N.E.2d 459, Ashland again applied for an operating permit, indicating it would install the filters but postpone use of low sulfur coal. In lieu of submitting technical data, Ashland relied on the Board's previous finding that its boilers effected no ambient air standard violations (See *Ashland I*, 57 Ill. App. 3d 1052, 1054, 373 N.E.2d 826, 827.) The Agency and Board then denied the permit as Ashland failed to show compliance with the ambient air quality standard of Air Pollution Rule 102 (Ill. P.C.B. Rules and Regs., ch. 2, Rule 102) (hereinafter Rule 102). (See *Ashland I*, 57 Ill. App. 3d 1052, 1054, 373 N.E.2d 826, 827.) On appeal, the court disagreed, stating:

> "While the Board's earlier finding would not necessarily be binding on the Board in the face of contradictory evidence, we believe it was *prima facie* evidence of compliance with Rule 102. Furthermore, Ashland introduced evidence that its Mapleton plant was located within the significant impact area of a supplemental control system (SCS) whereby two power companies agreed to switch fuels or curtail loads when atmospheric conditions for dispersion of contaminants are poor. According to the testimony of an Agency engineer, there should be no air quality violations within the area where Ashland's plant is located if SCS is working as intended. Since the Agency offered no contrary data, the record affords no basis for the denial of a permit and the Board's ruling must be reversed." *Ashland I*, 57 Ill. App. 3d 1052, 1056, 373 N.E.2d 827, 828-29.

The Board had meanwhile "revalidated" the stricken Rules 203 and 204. Ashland sought review of the regulations and they were vacated. (*Ashland Chemical Co. v. Pollution Control Board* (1978), 64 Ill. App. 3d 169, 381 N.E.2d 56 (hereinafter *Ashland II*).) Other challenges were similarly successful. (*Illinois State Chamber of Commerce v. Pollution Control Board* (1978), 67 Ill. App. 3d 839, 384 N.E.2d 922, *appeal dismissed* (1979), 78 Ill. 2d 1, 398 N.E.2d 9.) Beginning in 1978, Ashland and Sherex submitted and resubmitted their application for an operating

permit, and, ultimately, for the construction permit as well. Each time this was done, the companies attempted to respond to whatever objections the Agency presented. When both permits were again denied in 1980, Sherex appealed to the Board, which reversed the Agency and granted the permits. That reversal is the subject of these proceedings.

Two issues are presented for our review. The first is whether the Agency properly denied the permit applications for lack of information; the second, whether the permits were properly denied on the basis of violation of Rule 204.

Turning to the first issue, the Agency contends that the information submitted by Sherex was insufficient to verify compliance with the sulfur dioxide ambient air quality standards of Air Pollution Rule 308 (Ill. P.C.B. Rules and Regs., ch. 2, Rule 308 (hereinafter Rule 308)). Specifically the Agency stated in its denial letter that "[o]nly the conclusions of the modeling study conducted for Sherex by Dames and Moore were submitted with the permit application."

Air quality simulation modeling is a method of using data processing techniques to predict hypothetical ambient air quality concentrations based on information about emission rates from particular sources and weather data. After Rule 204 was again invalidated in *Ashland II* and a malfunction in Ashland's baghouse was corrected, compliance with Rule 308 remained at issue. While Ashland and Sherex approached this matter in a number of ways, the company ultimately decided to raise its boiler-house stack 40 feet to "GEP". ("GEP" or "good engineering practice" is used to describe a stack height which, for any particular plant, is superior in effecting emission dispersion and preventing excessive concentrations of pollutants due to downwash or eddy effects.) Using the Agency's CDM and a QSTM models and the CRSTER model approved by the United States Environmental Protection Agency (hereinafter USEPA), the Dames and Moore study concluded no Rule 308 violations would occur with or without the stack extension. The extension would, however, apparently effect lower sulfur dioxide concentrations and eliminate a downwash problem. The Agency offered no contrary data.

While the denial letter failed to apprise Sherex of the specific information the Agency deemed necessary, three items were proffered to the Board. Given that Sherex offered to supply additional information repeatedly during these proceedings and further offered to discuss the modeling with the Agency, the better practice would have been to request the additional information. The Agency accurately contends it has no statutory mandate to make such a request, a position the Board characterizes as "a somewhat capricious exercise of its powers under the Act * * *." (*Sherex Chemical Co. v. Illinois Environmental Protection Agency*, No. PCB 80-66, slip op. at 3 (P.C.B. Oct. 2, 1980).) Sherex

accurately contends that under section 39(a) of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1039(a)), the Agency, when denying a permit application, must state "the specific type of information, if any, which the Agency deems the applicant did not provide * * *." While the failure to do so in its denial letter presents an opportunity for remand of this cause, this would be a circuitous continuation of the litigants' and privy's six-year dispute. Rather than require the parties to resubmit the same alleged informational deficiency in another proceeding, we shall briefly address this issue on its merits.

The three types and specific items of information which the Agency claims were needed to determine compliance with Rule 308 are meteorological data, an explanation of how receptor points were selected, and an indication that the model monitor was representative of the air quality near the Sherex plant. We shall discuss each in turn.

At the hearing before the Board, the Agency accurately stated that Sherex had failed to indicate whether hourly or three-hourly meteorological data were utilized in the modeling. From this, it concluded Sherex failed to meet its burden of proof regarding the data. The Agency apparently elected to ignore the fact that the CRSTER model specifically calls for hourly data, and its own review documents indicate the modeling was consistent with USEPA guidelines requiring hourly data. Dennis Lawler, testifying for the Agency, said that it was familiar with, and respected, the work of Dames and Moore and was aware they always used hourly meteorological data in their modeling. Under these circumstances, we do not find the failure to submit the information was fatal to the application.

The Agency's second point at the hearing was that Sherex had not explained how receptor sites were selected to insure they reflected the point of maximum sulfur dioxide concentration. Interestingly, Lawler admitted that in the Agency's own recent modeling of the Peoria area, it had taken no special steps to determine such maximum receptor points. Lawler further admitted that Dames and Moore had used twice the number of points that are commonly considered acceptable and therefore would be more likely to have identified the appropriate maximum location. Sherex made an offer of proof that a model, recommended in the CRSTER manual, was used to determine the receptor points, but the Board did not deal with this question. Again, we do not find this lack of information fatal to the application.

Finally, the Agency contended that Sherex gave no indication that the model monitor was representative of the air quality near the plant. This overlooks the fact that Sherex, in its application, stated that it selected the Bowell monitoring site as it was closest of the 17 possible locations. Sherex's point of maximum concentration occurred within 2.0 kilometers

of its operation. The site chosen was located 1.9 kilometers from the plant and in the direction of the most frequently prevailing wind. As Sherex has given an indication that the model monitor was representative of the air quality near the plant, we fail to find this information lacking.

While the Board did not specifically consider the above three points, it did find that the modeling showed no violations of the ambient air quality standards for sulfur dioxide. It accepted the validity of the modeling, as the Agency had done when its results supported an earlier permit denial. The Board further found no relationship between extending the stack height 40 feet and causing or contributing to violations of the above standards. The record suggests no reason to disagree with the Board's conclusions. The Agency improperly denied the permit application for lack of information.

The second issue presented for our review is whether the permits were properly denied on the basis of violation of Rule 204. The Agency does not contend that the permits were properly denied under the provisions of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*); rather, it contends it was required to deny the permits under the provisions of the Clean Air Act (42 U.S.C.S. §7401 *et seq.* (1981 Supp.)). Sherex responds that the Agency is barred from now raising this issue under principles of *res judicata*, citing its relationship as privy to Ashland.

We need not consider whether the Agency is so barred as this issue has been recently addressed in *Celotex Corp. v. Illinois Pollution Control Board* (1981), 100 Ill. App. 3d 520. In *Celotex*, as in this cause, the Agency argued that, while Rule 204 has been invalidated by the Illinois courts, it remains a viable part of the Illinois State implementation plan. The Agency views its mandate as to enforce the plan, and hence, Rule 204.

Without reaching the question of whether the rule is enforceable in the Federal courts, *Celotex* reiterated the fact that it is not enforceable in the courts of this State (see also *Illinois v. United States Environmental Protection Agency* (7th Cir. 1980), 621 F.2d 259, 262) and will not be enforceable until the mandates of the Illinois courts are heeded. Given this specific holding, the permits were not properly denied on the basis of violation of Rule 204.

Accordingly, the order of the Pollution Control Board reversing the denial of the permits at bar and its order directing the issuance of the permits are affirmed.

Affirmed.

ALLOY and HEIPLE, JJ., concur.