ASHLAND CHEMICAL COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD, Respondent.

Third District   No. 77-362

Opinion filed September 27, 1978.

James W. Gladden and Percy L. Angelo, both of Mayer, Brown & Platt, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (George William Wolfe, Assistant Attorney General, of counsel), for respondent.

Charles B. Gustafson, of Caterpillar Tractor Co., of Peoria, and Richard J. Kissel and Jeffrey C. Fort, both of Martin, Craig, Chester & Sonnenschein, of Chicago, for *amici curiae* Caterpillar Tractor Co. and Illinois State Chamber of Commerce.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Petitioner, Ashland Chemical Company, in this proceeding seeks to review regulations of the Pollution Control Board relating to air quality standards. On July 7, 1977, in docket R71-23, the Pollution Control Board adopted regulations which included regulations 203(g) and 204(a) and (c)(1)(A). For convenience the regulations will be referred to as 203 (particulate emission standards) and 204 (sulfur dioxide emission standards).

In 1972 the Pollution Control Board in docket R71-23 initially adopted regulations 203 and 204 although such regulations did not become effective until May 30, 1975. These regulations were adopted pursuant to the Illinois Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1001 *et seq.*) and superseded other air quality regulations promulgated under prior acts. The validity of sections 203 and 204 was questioned in legal actions resulting in the decision of the Illinois Supreme Court in January 1976 in *Commonwealth Edison Co. v. Pollution Control Board*, 62 Ill. 2d 494, 343 N.E.2d 459, which approved the decision of the appellate court to reverse the Board's adoption of Rules 203 and 204 and remand the cause to the Pollution Control Board for further consideration. (*Commonwealth Edison Co. v. Pollution Control Board*, 25 Ill. App. 3d 271, 323 N.E.2d 84.) It is the nature and effect of the remanding order and the consequent procedure required of the Board which creates the initial problem to be resolved on this review. The petitioner

has also questioned the substantive validity of regulations 203 and 204, but in the view we have taken of this case it will be unnecessary to discuss the substantive questions.

Pursuant to leave granted by this court, the Illinois State Chamber of Commerce and Caterpillar Tractor Company have filed an *amici curiae* brief in this case.

The supreme court and appellate court in the *Commonwealth Edison* case describe in detail the events occurring prior to the opinions in those cases and they will not be described again in this opinion. In its opinion of December 19, 1974, the appellate court in *Commonwealth Edison Co. v. Pollution Control Board*, 25 Ill. App. 3d 271, 288, 323 N.E.2d 84, 96, declared:

> "We recognize that possibly scientific evidence may have been developed since the hearing and the resultant Board opinion in this cause that may not demand a relaxation of these challenged rules. Accordingly, we remand this cause on this matter with instructions to the Board either to validate Rules 203(g) and 204(a)(1) and (c)(1)(A) in accordance with section 27 of the Act or to prepare proper rules as substitutes."

Although the Illinois Supreme Court in the *Commonwealth Edison* case upheld the appellate court decision regarding Rules 203 and 204, it declined to consider the substantive validity of the regulations from the record before it believing that resolution of this issue should depend on new information which had been developed since the original hearings.

> "In view of the Board's order of March 7, 1974, directing new inquiry hearings on the precise issues we are here asked to consider, the extensive hearings that have been held and the 'wealth of new information' that has been gathered in those hearings, and the recent legislation authorizing the use of intermittent control systems until December 31, 1985, under conditions prescribed by the Board in lieu of compliance with sulfur dioxide emission standards, we decline to determine the validity of Rules 203(g)(1), 204(a)(1) and 204(c)(1)(A) on the basis of evidence adduced at hearings held in 1970, 1971, and 1972 and the Board's opinion of April 13, 1972." *Commonwealth Edison Co. v. Pollution Control Board*, 62 Ill. 2d 494, 503, 343 N.E.2d 459, 465.

In the spring of 1976, hearings were still continuing on two of the regulatory proposals cited in the supreme court decision, a proposal to relax sulfur dioxide standards outside the Chicago, Peoria and St. Louis MMA's (major metropolitan area) and a sulfur dioxide "inquiry" proceeding in PCB R74-2. These proceedings had been consolidated. On March 30, 1976, Ashland appeared at a hearing in that consolidated proceeding and asked that it be broadened to permit consideration of the

issues raised by the *Commonwealth Edison* remand, *i.e.*, the status of particulate regulations and sulfur dioxide regulations within the Peoria, Chicago and St. Louis MMA's. No action was taken by the Board on Ashland's request.

On April 8, 1976, the Board issued an order reopening the record in R71-23 and mutually incorporating the records in R71-23, R74-2 and R75-5.

A year later, on April 11, 1977, it was announced in the Environmental Register, the official publication of the Board in which public notice is given of variance and enforcement proceedings and regulatory matters, that the Board had received a study prepared by Marder and Associates in response to the supreme court's remand in *Commonwealth Edison*. The announcement stated that the Board was reviewing the study to determine whether it supported a revalidation of the regulations in question. It was further announced that the Board would issue an order on May 12, 1977, which would be subject to public comment prior to final action by the Board (Environmental Register #145).

At its regular meeting May 12, 1977, the Board announced that it planned, on June 9, 1977, to readopt without change the rules invalidated by the supreme court in the *Commonwealth Edison* decision. Ashland thereupon filed, on May 20, 1977, a motion for hearing and preparation of economic impact study. In its motion, Ashland argued that under the Act publication of proposed regulations, preparation of an economic impact study and hearings on the regulations and the study were required before the adoption of regulations. Ashland represented that it was prepared to present evidence at such hearings on the regulations and on the Marder Report, on which the Board was apparently relying. A number of other interested persons submitted comments to the Board at this time, urging that the Board hold substantive and economic impact hearings as required by the Act. Among these were Caterpillar Tractor Co., the Illinois Municipal Utilities Association, Illinois Power Company, and the cities of Rochelle and Mascoutah.

Despite the notice in the April 11 Environmental Register that the Board would issue an order on May 12, 1977, which would be subject to public comment, no such order was issued and no public comment period was established. Instead, at its regular meeting July 7, 1977, the Board issued an order "validating" rules 203(g)(1), 204(a)(1) and 204(c)(1)(A), to become effective September 1, 1977. Board member Young dissented from the Board's order, arguing that an economic impact statement and hearings were required prior to adoption.

The validation of the regulations was "subject to a public comment period to run for 45 days from the date of this Order." Ashland was one of

a number of interested persons who submitted comments during the "public comment period."

The September 1, 1977, "effective date" of the regulations came and went without any comment by the Board to indicate that it had ever considered in any way the filings made by Ashland and others during the "public comment period." No ruling was ever made by the Board on Ashland's motion for hearing which had been filed in May. No hearings were ever held on the regulations or on the Marder Report. No economic impact study was prepared. No further action was taken by the Board in this matter.

Before embarking further, we must decide whether Ashland's petition for review should be dismissed. Prior to oral arguments, respondent filed two motions to dismiss Ashland's petition. Both motions were taken with the case for consideration. Respondent's two motions involve sections 29 and 41 of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1029, 1041). Section 29 governs appeals from rules and regulations and allows "any person adversely affected or threatened by any rule or regulation" to file a petition for review pursuant to section 41. Section 41 requires that a petition for review be filed within 35 days after the entry of the order or other final action complained of.

■■ According to respondent's first motion, since Ashland failed to file a petition within 35 days of the Board's adoption on April 13, 1972, of Rules 203 and 204, petitioner has "waived any objection which it might have had to regulations and thereby acquiesced in the regulations as adopted by the Board in 1972." The difficulty with respondent's position is that the Board's adoption of Rules 203 and 204 in 1972 was held invalid in *Commonwealth Edison Co. v. Pollution Control Board*, 25 Ill. App. 3d 271, 323 N.E.2d 84, and this portion of the appellate court decision was affirmed in *Commonwealth Edison Co. v. Pollution Control Board*, 62 Ill. 2d 491, 343 N.E.2d 459. Once these rules were held invalid, new action was required of the Board with regard to formulating rules and regulations on particulate emission standards and sulphur dioxide emission standards, action which was subject to judicial review at the behest of "persons adversely affected or threatened" by the Board's subsequent actions. Whether the Board chose to comply with the mandate of the appellate court decision by adopting new and different "proper rules" or by validating Rules 203 and 204 in accordance with section 27, in either case, petitioner was entitled to review of the Board's order. Respondent's motion filed January 3, 1978, is denied.

■■ Respondent's second motion is based on section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1041) and paragraphs (a) and (b) of Illinois Supreme Court Rule 335 (Ill. Rev.

Stat. 1975, ch. 110A, par. 335(a), (b)). The motion requests that Ashland's petition be dismissed because Ashland failed "to join and serve other necessary individuals who were parties to the Pollution Control Board proceeding below." This motion is premised upon the fallacious assumption that all persons appearing before the Board at hearings on the adoption of proposed regulations are "parties." By utilizing the word "persons" as opposed to "parties," section 29 (Ill. Rev. Stat. 1975, ch. 111½, par. 1029) clearly recognizes that there are usually no parties at such a regulatory proceeding apart from the Pollution Control Board. We are also aware that a similar motion filed by the Pollution Control Board in *Commonwealth Edison Co. v. Pollution Control Board*, ___ Ill. App. 3d ___, ___ N.E.2d ___, (1st Dist., No. 77-1447), was denied by the Appellate Court for the First District. Accordingly, respondent's motion filed July 5, 1978, is denied.

The gist of the petitioner's initial objections to the Board's regulations is that the remand required additional hearings. The respondent on the other hand insists that no new hearings were required by the remand and the only requirement of the remand was that the Board consider the evidence presented in the related proceedings R74-2 and R75-5. This the Board claims it did by incorporating the records of those proceedings into the present proceeding, R71-23.

There are three areas of concern which the petition argues required additional hearings if the mandate of the remand was to be effectuated. First, the petitioner argues the Board should have received and considered evidence of intermittent control systems, second, an economic impact study should have been prepared and considered and finally, an opportunity should have been afforded to respond to the Marder report.

As is indicated in the *Commonwealth Edison* supreme court opinion, there were amendments to the Environmental Protection Act effective September 26, 1975. (Pub. Act. 79-1099.) In particular paragraph (r) of section 3 and paragraph (h) section 10 (Ill. Rev. Stat. 1975, ch. 111½, pars. 1003(r), 1010(h)) describe intermittent control systems as permissible methods of complying with air standards. Despite the supreme court's specific reference to intermittent control systems, the Board neither received any testimony about such systems nor mentioned such systems in its "revalidation" order of July 7, 1977. There is also nothing in such order in any way indicating reasons for not considering such systems. In its brief the respondent insists that because no new hearings were required under the remand, it was not required to consider this issue and the Board also suggests that the area was preempted by the Federal Clean Air Act (42 U.S.C.A. §§7410(a)(6), 7423(a), (b) (Supp. 1978)) and the Board was without authority to promulgate regulations in this area. By necessary implication the Board is suggesting that the amendments are

violative of Federal law. However, the petitioner in its reply brief insists that no preemption occurred and in fact that the Board itself is considering such intermittent control systems in its docket R75-5. See Environmental Register #172, May 22, 1978.

We are unable to agree with the respondent's argument raised for the first time on appeal that it was without authority to consider intermittent control systems. It made no such finding in its "revalidating" order and since the issue was neither considered nor ruled on by the Board we find no force to the argument at this time.

Notwithstanding the respondent's position that no new hearings were required by the remand, we believe the reasoning of the Illinois Supreme Court approving the remand order as issued by the appellate court must be considered as giving flesh to the order and may not be disregarded. There can be little doubt that the supreme court's reference in *Commonwealth Edison* to the amendments relating to intermittent control systems could have no meaning unless it was intended that the Board consider such systems in relation to clean air standards and this could only be done by considering additional testimony and evidence.

Although the supreme court did not refer to any economic impact studies, it appears that section 27 of the Environmental Protection Act was amended by Public Act 79-790 effective October 1, 1975, to provide for such studies in certain cases. The Board argues economic impact studies were not required pursuant to the amendments because it was required to comply with section 27 only as it existed in 1972, the year of the initial adoption of the regulations. Additionally, the respondent argues that it was the duty of petitioner to request the Illinois Institute for Environmental Quality to prepare such a study or alternatively, seek to compel such agency by legal process to provide such a study.

In our opinion the Board should have requested the Illinois Institute for Environmental Quality to prepare an economic impact study and the issue fully considered as a part of the remand proceeding. Paragraph (b) was added to section 27 by Public Act 79-790 and indicates that it applies to new regulations as well as amendments to existing regulations. Respondent insists that remand was neither a new regulatory proceeding nor one relating to amendments of regulations, a contention with which we do not agree. First of all dockets R74-2 and R75-5 were then pending proceedings relating to the amendments of regulations 203 and 204. Furthermore, the language of the appellate court indicates that either the regulations be validated or changed. This language contemplates amendments as an alternative to validation. Since the supreme court was unwilling to consider the validity of the regulations without reference to subsequent developments, it seems to us consistent to this approach that the more specific requirements concerning economic impact prescribed

by the 1975 amendments were of substantial significance. Consequently, an opportunity to have a study prepared, presented and considered should have been afforded. We find nothing in the record to support the respondent's suggestion that the failure of the Board to consider an economic impact study was the result of any omission of the petitioner.

This brings us then to the questions concerning the Marder report. This report was prepared by Marder & Associates under contract to the Illinois Environmental Protection Agency pursuant to a grant of funds from the United States Environmental Protection Agency. The report was presented to the Board by special hearing held without notice at which time Robert Duprey of the United States Environmental Protection Agency presented the report. The report consists of numerous volumes of data, comments, evaluations and opinions relating to air quality standards and control. No opportunity was afforded to permit analysis of the report or oppose its conclusions and recommendations. The Board suggests two somewhat contradictory reasons for supporting its conduct with regard to the Marder report. First, it suggests the report is merely an abstract of the more than 40,000 pages of testimony and exhibits considered in the various proceedings and second, in any event it didn't consider the report in arriving at its decision to revalidate regulations 203 and 204. If the report was indeed an abstract of extensive proceedings, important in distilling extensive evidence, then its only purpose would have been to enable the Board to consider it in arriving at its opinion. Consequently, to say that the Board did not consider the report seems contrary to its obvious purpose. However, the main problem with the Marder report is that it is not limited to abstracting the important parts of the evidence and testimony introduced, but also includes references to material not a matter of record, as well as including opinions and conclusions which might not arguably be supported by the record or at least subject to opposing interpretation. However the report is characterized, we fail to see how it could have been considered by the Board without affording an opportunity to those interested in the regulations to present their opposing views.

For the foregoing reasons we believe the Board failed to comply with the directions of the court on remand in *Commonwealth Edison Co. v. Pollution Control Board*, 62 Ill. 2d 494, 343 N.E.2d 459. Accordingly, the regulations are vacated and this cause is remanded to the Board for further proceedings consistent with the views expressed in this opinion.

Regulations vacated and remanded.

STENGEL and SCOTT, JJ., concur.