COMMONWEALTH EDISON COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD, Respondent.

First District (1st Division)   No. 77-1447

Opinion filed January 14, 1980.

Richard E. Powell, Eugene H. Bernstein, and Michael J. Gill, all of Isham, Lincoln & Beale, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (George William Wolff, Assistant Attorney General, of counsel), for respondent.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Commonwealth Edison Co., petitioner, brought this action against the Illinois Pollution Control Board (Board), respondent, pursuant to section 41 of the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1977, ch. 111½, par. 1041), for review of Board Rules 203(g)(1) and 204(c)(1)(A), which relate to air quality standards. Petitioner contends that these regulations are invalid because of their compliance dates.

The Federal Clean Air Act (42 U.S.C.A. §7401 *et seq.* (Supp. 1978)) requires States to devise plans for achieving compliance with Federal pollution standards. On April 13, 1972, the Board adopted Rule 203(g)(1), which establishes particulate emissions standards and limitations, and Rules 204(a)(1) and 204(c)(1)(A), which establish sulfur dioxide emissions standards and limitations. Rule 204(c)(1)(A) stated that it was to become effective on May 30, 1975, and Rule 203(i) stated that Rule 203(g)(1) was also to become effective on May 30, 1975.

The validity of these rules was reviewed by the appellate court in *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84. It was argued that when the Board adopted these rules, the Board did not comply with section 27 of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch.111½, par. 1027), which provides that the Board, in adopting regulations under the Act, shall consider, among other things, "the technical feasibility and economic reasonableness of measuring or reducing the particular type of pollution." The court held that there was no evidence in the record that the Board took into account the technical feasibility and economic reasonableness of complying in adopting Rules 203(g)(1), 204(a)(1), and 204(c)(1)(A). The court stated that it "recognize[d] that possibly scientific evidence may have been developed since the hearing and the resultant Board opinion in this cause that may not demand a relaxation of these challenged rules." (*Commonwealth Edison Co.*, at 288.) The court, therefore, remanded the cause and instructed the Board "either to validate Rules 203(g) and 204(a)(1) and (c)(1)(A) in accordance with

section 27 of the [Environmental Protection] Act or to prepare proper rules as substitutes." *Commonwealth Edison Co.*, at 288.

The supreme court granted leave to appeal and in *Commonwealth Edison Co. v. Pollution Control Board* (1976), 62 Ill. 2d 494, 343 N.E.2d 459, upheld the appellate court's decision regarding Rules 203(g)(1), 204(a)(1), and 204(c)(1)(A), although the supreme court declined to consider the substantive validity of the rules because new information had been developed during hearings which the Board had conducted after the rules were adopted, and because of a September 1975 amendment to the Environmental Protection Act in paragraph (r) of section 3 and paragraph (h) of section 10 (Ill. Rev. Stat. 1975, ch. 111½, pars. 1003(r), 1010(h)) describing intermittent control systems as permissible methods for complying with air quality standards. The supreme court stated (62 Ill. 2d 494, 503):

"In view of the Board's order of March 7, 1974, directing new inquiry hearings on the precise issues we are here asked to consider, the extensive hearings that have been held and the 'wealth of new information' that has been gathered in those hearings, and the recent legislation authorizing the use of intermittent control systems until December 31, 1985, under conditions prescribed by the Board in lieu of compliance with sulfur dioxide emission standards, we decline to determine the validity of Rules 203(g)(1), 204(a)(1) and 204(c)(1)(A) on the basis of evidence adduced at hearings held in 1970, 1971, and 1972 and the Board's opinion of April 13, 1972."

Following the supreme court's decision, the Board, on July 7, 1977, without first conducting hearings or preparing and considering an economic impact study, issued an order which "validate[d]" Rules 203(g)(1), 204(a)(1), and 204(c)(1)(A). The order "validat[ing] the rules stated that "validation" would become effective on September 1, 1977.

Several petitions for review of the "validate[d]" rules were filed in the appellate court, including that of petitioner in the case before us. In *Ashland Chemical Co. v. Pollution Control Board* (1978), 64 Ill. App. 3d 169, 381 N.E.2d 56, the Third District Appellate Court held that the Board had not complied with the supreme court's mandate in *Commonwealth Edison.* The court stated that the Board's order of July 7, 1977, did not indicate that the Board had considered intermittent control systems as it had been instructed by the supreme court in *Commonwealth Edison.* The court in *Ashland Chemical* further stated that while the supreme court in *Commonwealth Edison* did not refer to the need for an economic impact study, section 27 of the Environmental Protection Act was amended in 1975 to provide for such studies in certain cases (see Ill. Rev. Stat. 1977, ch. 111½, par. 1027(b)), and that the Board should have asked the Illinois

Institute for Environmental Quality to prepare an economic impact study. The court in *Ashland Chemical* also held that the Board should have given interested parties the opportunity to comment on a certain report prepared by Marder & Associates, a private firm under contract with the Illinois Environmental Protection Agency. For these reasons, the court vacated the rules and remanded the cause to the Board for further proceedings consistent with the views expressed by the court in its opinion.

Shortly after *Ashland Chemical* was decided, this court (the Appellate Court for the First District) in *Illinois State Chamber of Commerce v. Pollution Control Board* (1978), 67 Ill. App. 3d 839, 384 N.E.2d 922, decided three other consolidated petitions for review of the validated rules. This court agreed with the court in *Ashland Chemical*, and also held that pursuant to statute (Ill. Rev. Stat. 1977, ch. 111½, par. 1028) and the Board's own rule (Pollution Control Board Procedural Rule 202), the Board had to hold a new public hearing before readopting the rules. This court, in *Chamber of Commerce*, joined the court in *Ashland Chemical* in vacating the rules and remanding the cause to the Board for further proceedings.

The supreme court allowed leave to appeal and in *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 398 N.E.2d 9, held that the Board was estopped from relitigating issues decided adversely to the Board in *Ashland Chemical*, and dismissed the Board's appeal. The court stated explicitly that "the judgment of the First District Appellate Court remains in effect, to be followed, along with *Ashland Chemical*, by the Board." 78 Ill. 2d 1, 8.

Petitioner contends that "validate[d]" Rules 203(g)(1) and 204(c)(1)(A) operate retroactively, because when the Board validated these rules the Board, either intentionally or inadvertently, kept the date for compliance with these rules as May 30, 1975. Petitioner argues that the Board lacks the statutory authority under the Environmental Protection Act to adopt retroactive rules. In support of this argument, petitioner relies on sections 10(b), 27, and 28 of the Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1010(b), 1027 and 1028), and the rule of statutory construction favoring prospective operation of statutes. Petitioner also maintains that retroactive application of these rules would result in a substantial burden on the owner of an emission source because of the penalties which may be imposed under the Act for violations (Ill. Rev. Stat. 1977, ch. 111½, pars. 1042, 1044), and that the statutory interest in purifying the air would not be served by applying emission standards to emissions which have already occurred. Therefore, petitioner argues, it would be a violation of due process to apply Rules 203(g)(1) and 204(c)(1)(A) because of their May 30, 1975, compliance dates.

The Board contends that in its order of July 7, 1977, it simply determined new evidence justified "validat[ing]" the rules as originally adopted, and that this was consistent with the mandates of the appellate and supreme courts in *Commonwealth Edison.* The Board argues that because the rules were simply "validate[d]" they cannot be classified as retroactive and, therefore, are not subject to any statutory or constitutional requirements for retroactive rules. The Board further argues that even if Rules 203(g)(1) and 204(c)(1)(A) are viewed as retroactive, they are nonetheless constitutional. Retroactive rules, the Board argues, do not violate due process if their operation serves a strong public interest. The Board maintains that making May 30, 1975, the compliance date for Rules 203(g)(1) and 204(c)(1)(A) serves the strong public interest in having air quality standards enforced "during interim periods of administrative curation." Furthermore, the Board argues, the lack of notice is at the heart of any constitutional objection to retroactive legislation, and petitioner cannot assert that "revalidation" was unexpected under the mandates in *Commonwealth Edison.*

The Board also argues that Rules 203(g)(1) and 204(c)(1)(A) are not constitutionally objectionable for the reason that they were enforceable as Federal law under provisions of the Clean Air Act (42 U.S.C.A. §7401 *et seq.* (Supp. 1978)). Petitioner contends that this assertion by the Board is incorrect, because when the appellate and supreme courts in *Commonwealth Edison* set aside the rules, the United States Environmental Protection Agency announced that the Illinois air pollution control program was also deficient as a matter of Federal law because of the rules' unenforceability. See 41 Fed. Reg. 32302 (1976).

The present status of Rules 203(g)(1) and 204(c)(1)(A) is that they are invalid and have been remanded to the Board for further proceedings under the mandates in *Commonwealth Edison* (25 Ill. App. 3d 271, and 62 Ill. 2d 494); *Ashland Chemical* (64 Ill. App. 3d 169); and *Chamber of Commerce* (67 Ill. App. 3d 839, *appeal dismissed* (Docket No. 51671, December 3, 1979), ___ Ill. 2d ___). It is clear to us from a close reading of those decisions that it was not contemplated that the Board would adopt the old compliance date for Rules 203(g)(1) and 204(c)(1)(A).

The appellate and supreme courts in *Commonwealth Edison* emphasized the Board's need on remand to consider new evidence, and the supreme court also stressed the necessity of considering the significance of intermittent controls. The courts in *Ashland Chemical* and *Chamber of Commerce* also emphasized that the Board had to consider intermittent controls and also should consider an economic impact study and hold hearings. This clearly implies that the courts in these cases felt that a finding by the Board concerning technical feasibility and economic reasonableness would have to be based on developments which had

occurred since the original promulgation and compliance dates of the rules. This is true regardless of whether the Board's order of July 7, 1977, is characterized as a "validation" of the rules, or a "readoption," or by some other term. Furthermore, the Board's opinion of July 7, 1977, cites various developments which occurred shortly before or after May 30, 1975, including cost estimates made between 1971 and 1975, the "wide range of theoretical approaches * * * explored over the past 10 to 15 years" with respect to the "new and rapidly evolving technology" of flue gas desulfurization (FGD), and a summary of data from reports for May and December 1975 concerning FGD.

If, as we believe, the courts in *Commonwealth Edison, Ashland Chemical,* and *Chamber of Commerce* contemplated that a finding by the Board of feasibility and reasonableness would have to be based on recent technological and economic developments, it would be incongruous to retain May 30, 1975, as the compliance date. It would also be inconsistent with section 27 of the Environmental Protection Act, concerning which the appellate court in *Commonwealth Edison* stated (25 Ill. App. 3d 271, 281-82):

> "* * * We believe that the rules in question should be found valid when one can reasonably infer from the evidence in the record that the Board concluded in promulgating the rules that it was technically feasible and economically reasonable for a substantial number of the individual emission sources in this State to comply *by the specified deadline.*" (Emphasis added.)

For the reasons above expressed, we vacate the compliance date of May 30, 1975, for Rules 203(g)(1) and 204(c)(1)(A) and remand the cause to the Board for consideration of a realistic compliance date and for further proceedings consistent with this opinion.

Reversed and remanded with directions.

GOLDBERG, P. J., and McGLOON, J., concur.