PEOPLE OF the STATE OF ILLINOIS, Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.

No. 79–2034.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1980.

Decided May 9, 1980.

---

George William Wolff, Asst. Atty. Gen., Chicago, Ill., for petitioner.

Barbara H. Brandon, Pollution Control Section, Washington, D. C., for respondent.

Before FAIRCHILD, Chief Judge, WOOD, Circuit Judge, and JAMESON, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

The State of Illinois seeks judicial review of a Notice of Deficiency[1] issued on July 12, 1979, by the United States Environmental Protection Agency (EPA) pursuant to the Clean Air Act[2] and directed to the State of Illinois in regard to the Illinois State Implementation Plan (SIP). The state claims that EPA was required to follow notice and comment rulemaking procedures in issuing the notice, denies that a SIP deficiency existed, and argues that the notice was premature and improper.

A brief examination of the background of this controversy is necessary. In 1970 the Clean Air Act was amended to provide for a combined federal and state program to control air pollution in the United States. It was the responsibility of the federal government to establish nationwide primary ambient air quality standards to protect public health and nationwide secondary ambient air quality standards to protect the public welfare.[3] It then became the responsibility of each state to adopt and submit to EPA a SIP which provided for implementation, maintenance, and enforcement of both the primary and secondary standards.[4] In EPA consideration of approval of the SIP, one of the statutory requirements to be fulfilled was that the state had authority to carry out its plan.[5] In 1972 the EPA substantially approved the Illinois SIP.[6] Thereafter litigation developed in the state courts of Illinois challenging the state plan.

In early 1976 the Illinois Supreme Court in *Commonwealth Edison Co. v. Pollution Control Board*, 62 Ill.2d 494, 343 N.E.2d 459 (1976), determined that the particular Illinois standards had not been properly adopted according to state law procedures. The court remanded the cause to the Illinois Pollution Control Board with instructions to comply with the Illinois Environmental Protection Act provisions for promulgating rules[7] or to develop substitute regulations.

Following that decision the EPA issued its first Notice of Deficiency requesting that the State of Illinois in effect comply with the remand order of the Illinois Supreme Court. The Illinois Pollution Control Board responded to the court and the EPA in 1977 by readopting the same rules. More litigation followed.

In *Ashland Chemical Co. v. Pollution Control Board*, 64 Ill.App.3d 169, 21 Ill.Dec. 121, 381 N.E.2d 56 (3d Dist. 1978), the standards

[*] Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

1. The Notice of Deficiency as it appeared in the Federal Register (44 Fed.Reg. 40723) is reproduced in the appendix to this opinion.

2. 42 U.S.C. § 7401 *et seq.*

3. 42 U.S.C. § 7409.

4. 42 U.S.C. § 7410.

5. 42 U.S.C. § 7410(a)(2)(F)(i).

6. The ambient air quality standards and state regulations involved in this case regard total suspended particulate matter and sulphur oxides.

7. Ill.Rev.Stat., ch. 111½, § 1001 *et seq.* (1975).

were again vacated. No appeal to the Illinois Supreme Court followed. The issue arose again in *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill.2d 1, 34 Ill.Dec. 334, 398 N.E.2d 9 (1979). The Illinois Supreme Court held that the Board was collaterally estopped from relitigating the issues previously raised in *Ashland*.

Determining that as a result of those decisions the State of Illinois could not enforce its SIP, the EPA on July 12, 1979 issued its second Notice of Deficiency which is the notice involved in this appeal.

■ The parties do not question the reviewability of the issuance of the Notice of Deficiency and both agree that our judicial review is pursuant to Section 307(b)(1) of the Act, 42 U.S.C. § 7607(b)(1) (1976 Supp. I). That section provides for judicial review of a number of specific actions arising under the Act, but does not specifically include review of a Notice of Deficiency. However, the Act also provides that "any other final action of the Administrator" is reviewable. We have considerable doubt that the Notice of Deficiency qualifies as a final action of the Administrator since it appears to be an act of limited consequence preliminary to other events anticipated by the Act. "[A]dministrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 112–13, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948). We shall consider in more detail what a Notice of Deficiency is and what purpose it performs in the administrative process.

■ At oral argument we raised the questions about what the Notice of Deficiency was, what impact it had, what it required the state to do, and whether it was enforceable. It appeared to us that we were perhaps only engaging in an academic discussion and that any judgment of this court would make no substantial difference to anyone. We might merely be refereeing a federal-state bureaucratic quarrel dressed up to look like a case or controversy. Counsel for the EPA likewise appeared to have some misgivings about whether or not amidst the arguments in the briefs there was any genuine reviewable case or controversy. Counsel for the State of Illinois, however, strongly defended its case. Both parties seek to have us decide the matter on its merits.

We must first try to determine what a Notice of Deficiency is and what purpose it serves in the statutory scheme. Section 7410(c)(1)(C) provides for "notification" to the state if the Administrator determines as provided in § 7410(a)(2)(H) that the SIP is "substantially inadequate" to achieve the national primary or secondary standards. The title "Notice of Deficiency" does not appear in the statute, but is the name fashioned by the Administrator to apply to the § 7410(c)(1)(C) notification. The controversial notice contains historical recitals similar to the background comments of this opinion. As a procedural matter the notice also mentions that it is not subject to the rulemaking process. All those recitals support nothing more than a "request" that a revision be developed or other appropriate action be taken by the State of Illinois to correct the deficiencies previously found to exist by the courts of Illinois. It is further "requested" in the notice that the Governor inform the Administrator of EPA what is necessary to satisfy the adverse state court rulings and which state agencies have the responsibility to correct the deficiencies and by when.

The notice only informs and "requests," it does not "order." The Administrator lacks statutory authority to order the state to do anything about the alleged deficiencies. The Act obviously encourages and anticipates a federal-state cooperative joint enterprise in achieving cleaner air but if the state for some reason fails to submit a plan, submits an inadequate plan, or fails to revise an inadequate plan after notice, then the statute shifts the burden to the Administrator. 42 U.S.C. § 7410(c)(1). The Notice of Deficiency is only one step in an extended administrative process.

The state seeks to have us determine if the EPA in issuing the notice should have followed rule-making procedures, or whether the notice was premature, improper, or otherwise in error. We decline to give the parties an advisory opinion on those matters. If the Administrator has in mind that we should require the state to comply with the "request" to correct the alleged deficiencies, we decline as we have no authority to assist EPA in that manner. If the state has in mind that we should require the Administrator to develop a federal plan for Illinois, we decline as on the other hand we have no authority to assist the state in that manner. If the state further has in mind that we should decide whether or not the decisions of the Illinois courts and the Notice of Deficiency prevent state enforcement of the SIP in the federal courts, we again decline. Neither that issue nor the other issues are directly presented in this case. Counsel for the state has called our attention to a case pending before Judge Leighton in the United States District Court, Northern District of Illinois, entitled *People of the State of Illinois v. Commonwealth Edison Co., et al.*, Nos. 78 C 2675 and 79 C 311, consolidated, in which attempted state enforcement of the Illinois standards in federal, not state court, has been challenged by the defendant on the basis of the deficiencies determined by the Illinois courts and repeated in the Notice of Deficiency. That is an issue in that case, but not in ours. We may on a later day be required to consider Judge Leighton's ruling on that issue, but in the meantime Judge Leighton needs no interlocutory advice from us by way of dicta in this case.

Counsel for the state argues that we should remove the "cloud" over state enforcement efforts caused by the notice. The decisions of the Supreme Court of Illinois create more than a "cloud." The decisions are an absolute bar to enforcement in the state courts until the mandate of the court in *Commonwealth Edison* is satisfied by the Pollution Control Board. The Notice of Deficiency only reflects the state court decisions. The SIP by reason of the state court decisions cannot be enforced by the state in its own courts as contemplated by the Act. It appears that satisfying the Supreme Court of Illinois will also satisfy the Administrator of EPA.

We do not see it to be our responsibility in the context of this case to try to supervise or instruct the Administrator or the State of Illinois about their respective responsibilities under the Act or the proper procedures to follow. The present quarrel seems to us to be a tempest of no consequence and that any decision by us on the issues would likewise be of no consequence. This procedural quarrel for which a judicial resolution is sought does not seem to us to advance the public goals expressed in the Act and sought by both parties. Whenever the parties may bring us a genuine case or controversy arising and reviewable under the Act, we shall decide it for them. We do not believe, however, that judicial review, at least of this particular Notice of Deficiency, properly raises the various issues sought to be attributed to it.

This appeal is dismissed. Each party shall bear its own costs.

## APPENDIX

The Notice of Deficiency, as it appeared in 44 Fed.Reg. 40723, provided:

**Illinois State Implementation Plan;**

**Notice of Deficiency**

**Agency:** U.S. Environmental Protection Agency.

**Action:** Notice of Deficiency; Illinois State Implementation Plan.

**Summary:** As a result of Illinois Appellate Court action on September 27, 1978 which vacated regulations pertaining to particulate and sulfur dioxide emission standards USEPA finds the Illinois State Implementation Plan to be deficient.

**For Further Information Contact:** Maxine Borcherding, Air Programs Branch, Air and Hazardous Materials Division, U.S. Environmental Protection Agency, 230 South Dearborn Street, Chicago, Illinois 60604, (312) 353–2205.

**Supplemental Information:** This notice contains a summary of the findings of the EPA Regional Administrator for Region V from an assessment of deficiency of the implementation plan for the State of Illinois.

On May 31, 1972 (37 FR 10862) under Section 110 of the Clean Air Act and 40 CFR Part 51, the Administrator substantially approved Illinois' control strategy for the attainment and maintenance of the national primary and secondary standards for sulfur dioxide emissions and particulate emissions in the State of Illinois. In April of 1972, the Illinois Pollution Control Board (PCB) initially adopted regulations numbers 203 (particulate emission standards) and 204 (sulfur dioxide emission standards). These regulations were adopted pursuant to the Illinois Environmental Protection Act of 1970, *Ill.Rev.Stat.*, ch. 111½ sections 1001 *et seq.* (1975) and superseded other air quality regulations promulgated under prior acts.

The validation of Rules 203(g)(1), 204(a)(1) and 204(c)(1)(A) was challenged in court and, as a result, the Illinois Appellate Court found that the PCB had not followed the correct procedure in its adoption of those Rules. The Court remanded the cause to the PCB for further consideration. (*Commonwealth Edison Co. v. Pollution Control Board*, 25 Ill.App.3d 271, 323 N.E.2d 84.) The Illinois Supreme Court affirmed the Illinois Appellate Court's decision instructing PCB to validate Rules 203(g)(1), 204(a)(1) and 204(c)(1)(A) according to Section 27 of the Illinois Environmental Protection Act or to prepare proper rules as substitutes (*Commonwealth Edison Co. v. PCB*, 62 Ill.2d 494, 343 N.E.2d 459 (January, 1976).)

On August 2, 1976, the EPA Regional Administrator, Region V, formally issued a Notice of Deficiency requesting that a revision to the Illinois State Implementation Plan (SIP) be developed or that appropriate action be taken to correct the SIP deficiencies noted by the Illinois courts. (41 FR 149, August 2, 1976.) Authority for the Notice of Deficiency was provided in Sections 110(a)(2)(H) and 110(c) of the Clean Air Act.

On July 7, 1977, the Illinois PCB issued an order "validating" Rules 203(g)(1), 204(a)(1) and 204(c)(1)(A), to become effective September 1, 1977. The validation of the regulation was subject to a public comment period running 45 days from the date of the order. This action by the PCB was challenged by Ashland Chemical Company, one of the sources affected by the Rules.

On September 27, 1978, the *Illinois Chemical Company v. Pollution Control Board* (No. 77–362), —— Ill.App.3d ——. The Court held that the PCB did not follow the instructions of the Illinois Supreme Court in *Commonwealth Edison Co., supra*, for either "revalidating" the rules or adopting "substitute" rules. The Court found that the PCB did not consider intermittent control systems, that no economic study was prepared, and that no opportunity was provided for Ashland or others to respond to the Marder Report, a study which the PCB had commissioned. The Appellate Court held that sulfur dioxide and particulate rules as they apply to power plants in Illinois should again be vacated and remanded to the PCB for further proceedings.

The cumulative effect of these actions is that at the present time the Illinois SIP does not contain validated rules for the following:

(1) Particulate Emission Standards and Limitations for Fuel Combustion Emission Sources Using Solid Fuel Exclusively;

(2) Sulfur Dioxide Emission Standards and Limitations for New Fuel Combustion Emission Sources with Actual Heat Input Greater than 250 Million BTU per Hour, Solid Fuel Burned Exclusively; or

(3) Sulfur Dioxide Emission Rates for Existing Fuel Combustion Sources Located in the Chicago, St. Louis (Illinois), and Peoria Major Metropolitan Areas, Solid Fuel Burned Exclusively.

The EPA Regional Administrator for Region V hereby finds that the lack of enforceable portions of the Illinois regulations as hereinabove set forth constitutes a SIP deficiency pursuant to Section 110(a)(2)(H)

of the Clean Air Act. Accordingly, EPA requests that a revision to the Illinois plan be developed or other appropriate action taken to correct these deficient areas.

We are requesting that within 60 days from the date of this Notice the Governor submit a schedule to the Regional Administrator, EPA Region V, detailing the actions necessary for the validation of Rules 203(g)(1), 204(a)(1) and 204(c)(1)(A) according to the instructions of the Illinois Supreme Court in *Commonwealth Edison Co., supra.* The schedule should identify the agencies that are responsible for the plan revisions and the dates that action will be completed by the various agencies.

This notice is not subject to rulemaking procedures. The need for a plan revision is based on a finding by the Regional Administrator that the Illinois Appellate Court's remand of Rules 203(g)(1), 204(a)(1) and 204(c)(1)(A) requires action on the part of the State. Authority of this finding is provided in Section 110(a)(2)(H) of the Clean Air Act. Ample opportunity for public comment on the Regional Administrator's determination of SIP deficiencies will be provided during the public hearing that the State is required to hold on the plan revision before submission to EPA.

[Section 110(a)(2)(H) of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(H)]

Dated: July 5, 1979.

**John McGuire,**

*Regional Administrator, Environmental Protection Agency.*