THE ENVIRONMENTAL PROTECTION AGENCY, Petitioner, *v.* THE
POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District  No. 81-81

Opinion filed September 30, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (John Van Vranken,
Assistant Attorney General, of counsel), for petitioner.

Roy M. Harsch, Richard J. Kissel, and Jeffrey C. Fort, all of Martin, Craig,
Chester & Sonnenschein, of Chicago, for respondents.

Mr. JUSTICE ALLOY delivered the opinion of the court:
Another chapter in the continuing saga of the Environmental Pro-
tection Agency's attempts to enforce invalid Air Pollution Control Rule
204 is before us on this appeal.

Bemis Company, Inc. (hereinafter Bemis) on April 22, 1980, sought
from the Illinois EPA an operating permit for its coal-fired boilers at the
company's paper manufacturing plant in Peoria. The application for a
permit was made pursuant to the requirements of the Illinois Environ-
mental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*) and
applicable regulations. The Illinois EPA denied Bemis' application for an
operating permit, basing that denial, in pertinent part, upon an alleged
violation of Rule 204(c)(1)(A) of the Pollution Control Board's Rules and
Regulations. Rule 204 (c)(1)(A) set limitations on sulfur dioxide emissions
from existing sources in the Peoria area. Rule 204(c)(1)(A) had been de-
clared invalid by the State courts on several occasions, as being arbitrary
and capricious. *Commonwealth Edison Co. v. Pollution Control Board*
(1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, *aff'd in relevant part* (1976), 62
Ill. 2d 494, 343 N.E.2d 459; *Ashland Chemical Co. v. Pollution Control*

*Board* (1978), 64 Ill. App. 3d 169, 381 N.E.2d 56; *Illinois State Chamber of Commerce v. Pollution Control Board* (1978), 67 Ill. App. 3d 839, 384 N.E.2d 922, *appeal dismissed* (1979), 78 Ill. 2d 1, 398 N.E.2d 9.

As a result of the action respecting Rule 204 taken by the State courts, the United States EPA issued notices of deficiency in 1976 and again in 1979 (41 Fed. Reg. 32,302, 32,303-04; 44 Fed. Reg. 40,723-24) with respect to Illinois' State Implementation Plan (hereinafter SIP). The United States EPA in those notices found that because of the action by the State courts vacating Rule 204, the SIP for Illinois was deficient in that it did not contain enforceable regulations governing $SO_2$ emissions. The United States EPA in the notices requested that a revision of the Illinois SIP be submitted, so as to correct the deficiencies. No action submitting a revision of the vacated regulation was taken. Despite the fact that the Illinois courts had vacated Rule 204 under the State law which provided for its promulgation, and despite the fact that the United States EPA had twice made findings that the SIP for Illinois was deficient for failing to have a validated rule governing $SO_2$ emissions, the Illinois EPA based its denial of the Bemis permit on Rule 204(c)(1)(A). The Illinois EPA position in this administrative action was that, even though the Rule has been invalidated by the State courts, it remained, nevertheless, a part of the SIP, which itself had the force of *Federal* regulation by virtue of the approval of the Illinois SIP in 1972 by the administrator of the United States EPA. Therefore, the EPA argued, Rule 204(c)(1)(A) remains valid and enforceable, by it, in permit proceedings such as those present in the instant case.

Bemis appealed the denial of the permit to the Illinois PCB, and the PCB reversed the denial by the EPA, finding that it had only to make the determination based upon State law, and not upon the SIP, whatever its status was with respect to Rule 204. The Illinois EPA has appealed the decision of the PCB granting the permit to Bemis, and the EPA argues that Federal law prohibits the permit to issue, and that the PCB must follow that Federal law. Before addressing the EPA argument, it is necessary to set forth the history behind Rule 204 and its treatment by the administrative agencies and the courts.

The Clean Air Act Amendments of 1970 "represented a drastic revision of earlier Federal air quality standards." (*Appalachian Power Co. v. Environmental Protection Agency* (4th Cir. 1973), 477 F.2d 495, 497, cited in *Indiana & Michigan Electric Co. v. Environmental Protection Agency* (7th Cir. 1975), 509 F.2d 839, 841.) Both in 1970, and again in 1977, when the Act was amended, Congress recognized "that the prevention and control of air pollution at its source is the primary responsibility of the States and local governments." (42 U.S.C.S. §7401(a)(3) (1981 Supp.).) To

achieve this goal, each State was required to develop and submit to the United States EPA a State implementation plan which provided for the implementation, maintenance, and enforcement of national primary and secondary ambient air quality standards. (42 U.S.C.S. §7410(a) (1981 Supp.).) Illinois developed and submitted its plan, included in which was Rule 204 of the Air Pollution Rules and Regulations, and Illinois' SIP was approved by the United States EPA on May 31, 1972. Approval by the United States EPA was challenged, but it was upheld by the Seventh Circuit Court of Appeals in *Indiana & Michigan Electric Co. v. Environmental Protection Agency* (7th Cir. 1975), 509 F.2d 839. The challengers in that case, among other things, argued that to the extent that the Clean Air Act permitted approval of SIPs without considering challenges based upon technological feasibility and economic impact, the Act violated due process. The Seventh Circuit rejected the due process argument, concluding that challenges on that basis could be made in enforcement proceedings or through the State courts. It stated:

"In addition, petitioners have a right to challenge the reasonableness of state plans in the state courts, and as the respondent concedes, if 'part of a state implementation plan is held invalid by a state court, the state would have to revise that part. Should the state fail to do so, the Administrator must propose and promulgate a revision * * *.' " (509 F.2d 839, 847.)

Thereafter, in Illinois, Rules 203 and 204 of the Air Pollution Rules and Regulations were challenged in the State courts, based upon the PCB's failure to take into account technical feasibility and economic reasonableness in the promulgation of the rules. (Ill. Rev. Stat. 1977, ch. 111½, par. 1027(a).) The State court challenges were successful, and the rules were vacated as being arbitrary and capricious. (*Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, *aff'd in relevant part* (1976), 62 Ill. 2d 494, 343 N.E.2d 459.) As a result, as previously mentioned, the United States EPA issued a notice of deficiency (41 Fed. Reg. 32,302 (Aug. 2, 1976)), based upon the lack of valid rules in the SIP.

The PCB, on July 7, 1977, attempted to revalidate the stricken rules by order, without complying with the Illinois Supreme Court's directive in the previous case. This attempted revalidation was challenged and the rules were again vacated. (*Ashland Chemical Co. v. Pollution Control Board* (1978), 64 Ill. App. 3d 169, 381 N.E.2d 56; *Illinois State Chamber of Commerce v. Pollution Control Board* (1978), 67 Ill. App. 3d 839, 384 N.E.2d 922, *appeal dismissed* (1979), 78 Ill. 2d 1, 398 N.E.2d 9.) Again a notice of deficiency was issued by the United States EPA (44 Fed. Reg. 40,723 (July 12, 1979), which stated:

"The cumulative effect of these actions [State court decisions] is that at the present time the Illinois SIP does not contain validated rules for the following:

(1) * * *

(2) * * *

(3) Sulfur Dioxide Emission Rates for Existing Fuel Combustion Sources Located in the Chicago, St. Louis (Illinois), and Peoria Major Metropolitan Areas, Solid Fuel Burned Exclusively."

The notice further stated:

"We are requesting that within 60 days from the date of this Notice the Governor submit a schedule to the Regional Administrator, EPA Region V, detailing the actions necessary for the validation of Rules 203(g)(1), 204(a)(1) and 204(c)(1)(A) according to the instructions of the Illinois Supreme Court in Commonwealth Edison Co., supra. The schedule should identify the agencies that are responsible for the plan revisions and the dates that action will be completed by the various agencies."

At the time of oral argument in this case, no rules had been repromulgated and no revision made of the Illinois SIP.

Thus, at the time Bemis was denied an operating permit by the Illinois EPA, being April 1980, on the basis of Rule 204(c)(1)(A), that Rule had been vacated by the Illinois courts. Furthermore, the United States EPA, charged with overseeing and administering the Clean Air Act, had twice determined that the Illinois SIP was deficient because it did not contain validated rules governing $SO_2$ emissions.

The Illinois EPA's argument for its action is based upon two provisions of the Clean Air Act (42 U.S.C.S. §7410 et seq. (1981 Supp.)):

"Section 110(i)

(i) Except for a primary nonferrous smelter order under Section 119, a suspension under section 110(f) or (g) (relating to emergency suspensions), an exemption under section 118 (relating to certain Federal facilities), an order under section 113(d) (relating to compliance orders), a plan promulgation under section (c) of this section, or a plan revision under subsection (a)(3) of this section, no order, suspension, plan revision, or other action modifying any requirement of an applicable implementation plan may be taken with respect to any stationary source by the State or by the Administrator."

"Section 116

Except as otherwise provided in sections 119(c)(e), and (f) (as in effect before the date of the enactment of the Clean Air Act Amendments of 1977), 209, 211(c)(4), and 233 (Preempting certain State regulation of moving sources) nothing in this Act shall pre-

clude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard of limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that if an emission standard or limitation is in effect under an applicable implementation plan or under section 111 or 112, such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section."

The Illinois EPA argument is that Rule 204(c)(1)(A) of the SIP has never been revised pursuant to the Clean Air Act's stringent provisions for revision, and that therefore Rule 204(c)(1)(A) remains a valid and enforceable part of the Illinois SIP. It reads section 110(i) as preventing any action by Illinois, either by its legislative, executive or judicial branches, to modify the SIP, unless such action conforms to the procedure for revision set out in the Clean Air Act. The core of the argument is that the State court decision vacating Rule 204(c)(1)(A), on the basis that its promulgation was not in accord with State law, has no effect at all upon the SIP, as approved by the administrator of the United States EPA. From that point, it argues that section 116, which prevents any State from enforcing or adopting an emission standard or limitation less stringent than that in effect under an SIP, acts to prevent the PCB from granting Bemis its operating permit, since Bemis does not meet the emission standard for $SO_2$ set forth in Rule 204(c)(1)(A) of the SIP.

We cannot read these sections of the Act to reach the result argued for by the Illinois EPA. We find that when Congress, in section 110(i), stated that no action suspending, revising or modifying a requirement of an applicable implementation plan could be taken by the "State," it did not intend to preclude legitimate action, taken by State courts, acting in review over the underlying State legislation upon which a State's SIP was based. We cannot conclude that Congress' intention in section 110(i) was to nullify a lawful and legitimate decision by the highest court of a State, which decision struck down part of the plan under State law. Yet, were we to adopt the Illinois EPA's construction of section 110(i), the result would be just that, for those State court decisions would be rendered essentially meaningless, in that despite them, the Illinois EPA could continue to enforce an invalid rule in the State courts. Therefore, we conclude that the actions by the courts of Illinois in vacating Rule 204(c)(1)(A) were not plan revisions, suspensions or modifications "by the State" of its applicable implementation plan, within the meaning of section 110(i). The effect of the State court decisions vacating the rule was to leave the SIP without a valid rule governing $SO_2$ emissions from existing stationary sources. Rule 204(c)(1)(A), as a result of the State decisions, was no longer

a valid and enforceable part of the SIP. This was recognized and stated by the United States EPA in its notices of deficiency issued as a result of those State court decisions. The State court decisions, while materially affecting the SIP, by rendering a portion invalid and unenforceable, were not modifications or revisions such as were contemplated in section 110(i).

■■ ■ Furthermore, since, by virtue of the State court decisions, Rule 204(c)(1)(A) was invalid and unenforceable under either State law or within the SIP, therefore section 116 did not apply, since by its terms it prevents the enforcement of emissions standards or limitations *in effect* under an applicable implementation plan. To read these sections so as to arrive at a contrary conclusion, which would nullify and render meaningless the State court decisions, even as they affect State agencies charged (under State agencies charged) under State law, would be to reach an absurd and illogical result. It is a long-established principle of statutory construction that constructions and interpretations of statutory language which lead to absurd results are to be avoided, even if they be supported by the literal language of a provision. *Huidekoper's Lessee v. Douglass* (1805), 7 U.S. (3 Cranch) 1, 66, 72, 2 L. Ed. 347, 368, 370; *Perry v. Commerce Loan Co.* (1966), 383 U.S. 392, 400, 15 L. Ed. 2d 827, 833-34, 86 S. Ct. 852, 857.

We would note also that the result we reach on this issue is in accord with decisions by two Federal District Courts (*Illinois v. Celotex Corp.* (C.D. Ill., No. 80-1531, filed May 26, 1981); *Sierra Club v. Indiana & Michigan Electric Co.* (S.D. Ind., No. W.D. 81-8-C, filed June 5, 1981) and with *dicta* expressed by the Seventh Circuit (*Illinois v. United States Environmental Protection Agency* (7th Cir. 1980), 621 F.2d 259). (But see *Illinois v. Commonwealth Edison Co.* (N.D. Ill. 1980), 490 F. Supp. 1145.) In the Celotex case, Federal Judge Robert Morgan, dismissing an enforcement action based on Rules 203(g)(1)(B) and 204(c)(1)(A), stated:

> "It would be an anomaly, if not a denial of defendant's due process rights, to allow, at this point, full enforcement of those invalid regulations, especially by the State of Illinois, which is totally barred in its own courts. Plaintiffs have argued that unless the regulations can be enforced in federal court, polluters are totally free to continue to pollute, and the enforcers have no protection until the State of Illinois acts to repromulgate the rules. It is apparently not true, however, that a suit of this kind is the only alternative open to plaintiffs."

In *Illinois v. Commonwealth Edison Co.*, the Seventh Circuit, in *dicta*, commented:

> "Counsel for the state argues that we should remove the 'cloud' over state enforcement efforts caused by the notice [of defi-

ciency]. The decisions of the Supreme Court of Illinois create more than a 'cloud.' The decisions are an absolute bar to enforcement in the state courts until the mandate of the court in Commonwealth Edison is satisfied by the Pollution Control Board. The Notice of Deficiency only reflects the state court decisions. The SIP by reason of the state court decisions cannot be enforced by the state in its own courts as contemplated by the Act. It appears that satisfying the Supreme Court of Illinois will also satisfy the Administrator of the EPA." (621 F.2d 259, 262.)

For the reasons stated in this opinion, we affirm the decision of the Pollution Control Board, overturning the denial of a permit by the EPA, and ordering that an operating permit be issued to Bemis.

Affirmed.

STOUDER and BARRY, JJ., concur.